Good morning. Welcome to San Francisco and to the Browning Courthouse. This is the time set for oral argument in the case of Raymond Lewis v. Ronald Davis. The parties are ready to proceed. You may begin. May it please the Court. My name is Brian Abbington and I represent the petitioner Raymond Lewis. I would like to reserve five minutes for rebuttal. This case is riddled with procedural prejudicial errors and omissions of trial counsel, but no failure was more egregious than not mounting an all-out challenge to admission of evidence that Mr. Lewis murdered an older friend and neighbor when barely a teen by arson. The state's court ruling that admission of the prior murder, which trial counsel failed to investigate and challenge in any meaningful way, was not prejudicial is unreasonable. It absolutely strains credulity to suggest that eliminating the fact of a prior murder, which the trial prosecutor argued was highly aggravating, would clearly have made no difference. If drug abuse, criminal activity, and misbehavior impacted the jury's decision, it is incongruous to argue no prejudice from a prior murder where a man was burned alive. Notably, the trial court's opinion negates Respondent's lack of prejudice argument, since the trial court specifically relied on the prior murder arson to reject Mr. Lewis's disproportionality claim. Additionally, Respondent's argument that the instant offense, the murder of Sandra Sims — to the earlier murder. What are the specific deficiencies that should have been done, and how would they have made a difference? Specifically, you should have talked to or interviewed Juanita Jackson Wall, who was present at the scene. She lived on the corner by where the incident happened. Her children and brothers were coming out of the house. They were on the same school bus as Suzy Johnson was, the woman who testified at the original trial, that she pulled Mr. Rogers out of the back of the car at the trial in 1990. Ms. Johnson became very upset and refused to testify, refused to review her statement, but said she couldn't testify. If Ms. Jackson had been called, she would have said that she actually observed Mr. Rogers crawl out of the car. She was there when he talked. He didn't implicate the boys. He said that there was nobody else in the car with him, and she also talked to him several minutes before the police came and got him. So Ms. Jackson had information about that. The petitioner's mother, Minnie Lewis, had information about the incident. She was out there. And how would that information have been exculpatory? It's exculpatory because it undermines the argument that happened, that this whole information and charge of the prior murder was based on the testimony of basically one witness, a juvenile, Willis Randolph. There's also the confession. But that confession, that statement, was obtained under duress. The statement is not written. It's not orally. There's no video. There's no tape recording. There's not even a written statement signed by the defendant. It's just one line in Officer Martin, the police and the DA investigators, was one line in his report that he says, I struck a match and I threw it in. That comes at 5 o'clock after he's been held since about 10 o'clock that morning, separated from his companions. His mother's not contacted. His mother's not advised. He has no, there's no food provided. There's no water provided. There's no indication of what their conditions were like. Were they handcuffed? Were they moved from? Counsel, could I interrupt? Sure. Because you're very familiar with the facts of the case. But I'm trying to segregate these into legal arguments. And for me, they're running together. All right. So where you started, I think you were talking about ineffective assistance of counsel for not attacking. And it was sounding like you were suggesting that counsel was ineffective for not relitigating what I'm going to call the Rogers murder. That would be correct. The idea is that the statement could have been challenged on several. The confession? The confession. Okay. His confession to Officer Martin occurs at approximately 5 o'clock. We have testimony from Officer Lee. Forgive me for interrupting again. So is your argument counsel is ineffective for not challenging the admission of the confession? All of it. Not challenging the confession, not investigating that case. He didn't talk to me. Okay. So let me back up then. If your answer is all of it, if I could get you to compartmentalize, the first bucket for me is the evidence of what I'm going to call relitigating the case, what happened at the scene, because you're mentioning several witnesses who were there, who saw the boys running, and so on and so forth. And I struggle to see what evidence that you've mentioned the jury didn't already hear. Why wouldn't it have been cumulative to have called many or any of the other witnesses you mentioned? The witnesses who testified were not thoroughly cross-examined. The idea is that their statement, the confession by Raymond, when he's 13 years old, he is obtained after he's held for about seven hours. This is kind of a Taylor v. Maddox situation. Okay. So now you're going back to the confession. But my question was, and it probably wasn't very well articulated, but of the witnesses that you think the counsel was ineffective for not calling, the witnesses to the crime? Yes. What if that testimony would not have been cumulative? I believe all of that testimony is not cumulative because the idea that Willie May, I believe, Willie May, Wilson, Juanita, Jackson, Wall, these people weren't called at all. But the jury did hear, forgive me for interrupting, the jury did hear testimony from other witnesses about the boys running towards the fire, the boys running away from the fire, and so forth. So I'm trying to figure out what the jury didn't hear. It's a really high hurdle to relitigate that case here. That's correct, Your Honor. The idea is, though, that trial counsel didn't invest, he couldn't have made decisions about how to defend that case unless he talks to the witnesses from that case. Okay. He couldn't just stick with the reports and the other stuff. You'd have to actually talk to the witnesses, read the reports, and cross-examine those witnesses based on those reports, things like that. So if you haven't talked to Ms. Wall at all, then you don't know what she's going to say. If you interviewed her and then said, oh, she's an unreliable witness, there's no hope. If I interview the defendant's mother that she's an unreliable witness, there's no hope. But they didn't even do those things. That's one of the main omissions in this case that carries over into the other part. Could I get you to focus that on my next question? Sure. The California Supreme Court decided that this confession was admissible or that there was no error in admitting the confession and that your client's Miranda waiver was knowing and voluntary. Why were those rulings unreasonable? What's unreasonable is that Mr. Lewis has stated a prima facie case, that if, just if what he says, you call this witness, interview these other people, you didn't interview these witnesses, that's not what effective trial counsel does. That's why it's ineffective. He's pled that and presented it to the court. They're not allowed. They're supposed to under California law in a pinholster take those allegations by Mr. Lewis. It doesn't go to the confession, which was Judge Christin's question. Well, the confession could be challenged on the basis of the detention and those other things. What's your best case? We have to show that it was contrary to law. I understand. This has to be unreasonable. So I would say that the – But you're pursuing that claim, if I understand this correctly, under 2241D, is that right? 2254D1. Sorry. So what's your best case that shows that the California Supreme Court was unreasonable in allowing that confession to come forward? As far as the confession, I believe my best case is Strickland, that you can't – that he hasn't investigated the confession. He hasn't investigated it. He didn't talk to Raymond or talk to the other people. So that would go to prong one of Strickland, which is you think that his – that defense counsel's performance was below an objectively reasonable standard, right? The California Supreme Court decided that that wasn't the case. But what about prejudice? Well, the prejudice of a prior murder stands out because the fact that if Mr. Lewis comes to the court in 1990 and he's already committed a murder when he was 13 years old, it makes him look like a bad seed. It makes him look like someone who the death penalty is exactly made for because he's killed before, he's killed again. Okay, so can you circle all the way back around to – because both of my colleagues now are trying to get you to answer the question about deficient performance. What was counsel supposed to do vis-à-vis that confession? Vis-à-vis the confession? Interview other witnesses? How does that go to voluntariness of the confession? Because the conditions under which – Raymond Lewis is picked up from his friend Benny Sanchez's house at about 10 minutes to 10. Two officers in the front, two officers in the back. They take all three boys by separate cars to the police station. His mother doesn't have a phone. She doesn't have a car. But we know the facts. I know I keep interrupting you. We know the facts, and I appreciate that you do too. I really appreciate that you do too. And I think what you're telling me, your argument, is that the circumstances were coercive? Yes. All right, so can you tick those off for me? Why should I conclude that the California court unreasonably found that it wasn't unduly coercive, that it was voluntary? The fact that they were separated, the fact that they were transferred, the fact that they were kept separated, the fact that they were – of course, factors this court has taken into consideration. For example, in Taylor v. Maddox, the fact that the inquisitive interrogators are switched. This is a 13-year-old boy. You bring him in, you have two officers, and they interrogate him for about four hours. We don't know if he's cuffed or not, but we know that lack of detail is on them because under federal law, under Galt, they're supposed to make these special provisions for taking a statement from a juvenile. So we have the initial coercive conditions. They are moving him around. Then they bring in Officer Martin, who's a black male, under the theory that he's a black male, he can cooperate or he can communicate with them easier. I would suggest, I would submit to the court that that's racist thinking, that the idea that you bring in a man who's a prosecuting – who is an agent for the prosecution and bring him in to talk to these three boys, we have no record of what he says to them, anything about what happened to them. He talks to them. Can I – forgive me, forgive me. The legal standard is that the California Supreme Court was required to determine or consider the totality of the circumstances. Correct. Okay. Is there a circumstance that you've mentioned or not mentioned? Is there a circumstance they failed to consider? There's several circumstances that the court failed to consider. If you give me just a second. I had bullet points for them, and, of course, they were evading me. But I will tell you that there's no mention of the race – not the race. There's no mention of what their conditions were. There's no mention of a response to Mr. Lewis's allegation about the coercive conditions, about where they were moved, the fact that food wasn't provided or water wasn't provided. Those are things that were taken into consideration. Well, the California Supreme Court mentioned that they were given dinner, I think. No, they're – well, that's an error because there's a statement from – Well, actually, I don't think the California – the California Supreme Court says, we don't know – we know that they were making provisions for the boys for dinner. That was about 5 o'clock. My question is, is there a circumstance, sir, that the court failed to consider? Yes. I'm sorry. Give me a second. I would say the ones that I'm trying to talk about are the movement of the boys from one location to the other, the conditions under which they were kept, the fact that the mother wasn't communicated. The state notes correctly that there is no requirement that, for example, that Raymond be – Raymond Lewis be remirandized. But that's a harsh rule as it applies to a 13-year-old child. It's one of the circumstances that has to be taken into consideration. He wasn't remirandized. His mother said there's no constitutional requirement that we contact his mother. That's true. But it's one of the factors to be taken into consideration. Counsel, I'm having trouble following your argument here today because looking at your briefs, it looks like you are really trying to say – I think it's Claim 17, the admission of confession to the 75 murder that the Supreme Court of California got that wrong. That is correct. I'm trying to figure out what's the legal basis from which you would rely on and stand on why the California Supreme Court got that wrong. Right now I asked you what case is the best case to support why the confession was involuntary. You said Strickland. You don't cite Strickland. Just a second. If you would, just let me finish. You don't cite Strickland in that part of your brief for that. It looks like you cite JDB v. North Carolina, but that case was a 2011 case, and that was not the law at the time that the California Supreme Court made its decision. I want to give you an opportunity, again, to tell me why that confession, why the Supreme Court's decision was contrary to law. All right. I apologize. That's fine. This is your opportunity to kind of square this up, and I'm afraid that you're bringing in all the facts under one, and I just want to keep things straight in terms of how you presented it in your briefing. Viscotti is another one of the cases that we did cite that in our briefing, and we would say that neither the state court nor the California Supreme Court mentions several of the factors that could have impacted whether or not the waiver of the statements were voluntary, and that was the manner in which the boys were approached. The guy was in two doors and out the back. The drive from Riverside to Riverdale to the Fresno Sheriff's Office with only Mr. Lewis in the vehicle. The total separation and isolation from anyone other than Lean, Christensen, and Martin until the evening when the confession was given. Confrontations by at least five different interviews, with each constituting a change in interviewers, which the court had noted in Maddox. The juggling of interviews of the three juveniles. Placement of Mr. Lewis either in another office and observed or handcuffed in a holding cell at the Sheriff's Department. Mr. Lewis's diagnosis as paranoid schizophrenic. But what are you listing for me right now? I'm listing factors affecting the voluntariness of the confession that were not mentioned in the state courts. And what's your best case? I would say Taylor v. Maddox is the best case on this issue of voluntariness. There's also the Andrews case, which also talks about voluntariness of a confession. Andrews? Which Andrews case? Your Honor wrote the opinion, I believe. It was a three-body case. But that opinion was not in effect at the time California. At the time of the offense, I would say that that was a violation of the gault. It was a three-part process. And you don't cite Andrews anywhere in your briefing. No, no. Okay. So I'm just trying to figure out how is this contrary to law? What's interesting to me is the California Supreme Court looks like they considered the witness testimony that Lewis received various citations and warnings from the police before 1975. And similar to the district court, I haven't been able to find evidence supporting those various citations. I wanted to ask you if you knew what citations and warnings the California Supreme Court was referring to. It's my understanding that there were inchoate offices that Mr. Lewis had received warnings from the police for ringing doorbells, breaking windows, and throwing rocks at streetlights.  The California Supreme Court's opinion? Yes. I couldn't find anything in the record. And I was just trying to figure out why maybe that wasn't challenged, that factual finding as part of your 2254-D2 argument in Claim 17. But it doesn't look like that was challenged. Basically, our argument under 2254-D1 is that the state Supreme Court is supposed to accept Mr. Lewis's allegations as true. So this whole idea of, you know, we could have, there could have been better witnesses, or there could have been other witnesses, or the credibility of his witnesses is not a good, it is not a question that the court should have been asking at that time. The question on the table before the court was, has he stated a prima facie case of trial counsel's ineffectiveness? Would those things the trial counsel failed to do cause prejudice? Did they cause prejudice, and is it likely that the result of the proceeding would be different? The court, in applying clearly established federal law in terms of even the Miranda decision, that Miranda is not in and of itself conclusive, that the idea is that he still has a defense under coercion, that you could give him the warning, give him the warning first thing in the morning, and the idea is that, well, then that closes it. That's not true. The inquiry doesn't stop there. The seven hours that he was there, the age, what the court did, what the state's doing in this argument here, and what they did in the previous decision was they took all of these factors in isolation. That if you took, you have this one, and we take the mom, and we take the this, and we, and so they took each one of those, the idea that he has a slow, that he had low intelligence, the mental infirmities, they track those things one at a time. They all affect the totality of the circumstances, and we're saying that they failed in that totality of circumstances case. I could provide. I'm trying to separate it out into buckets, just like Judge Christin, and it seems like the other claim 18, you're challenging kind of counsel's failure to show the innocence of A.Z. Rogers' murder. Is that right? I don't think the standard is innocence. I think that what we're trying to do here, and if I fail to express this correctly, what we're trying to express here is their trial counsel spent a lot of time trying to beat the murder case by investigating and attacking the credibility of Paul Pritchett. He hoped to win the case at the guilty verdict. But one of the first things that any lawyer does if you have a client who's charged with a murder and he has a prior murder is to check out the prior murder, to talk to his mom. What happened with Raymond when he was 13? He didn't talk to his mom until the day she testifies. She's on the stand when she meets this lawyer for the first time. If that's the standard in this circuit, then we can say that. The lawyers can walk up, and they can put mom on and say, Mom, you love him, you don't want him to die. Okay, we're good. And that's what they did, and they asked for it. They had two years here. They had two years, over two years. Raymond got arrested in June of 88, and he didn't go to trial until 1990. They asked him, do you have any other witnesses? I have witnesses. He gives us the witnesses. They asked a year before this, we need more time, because he gave us all these witnesses. This isn't a guy who's non-cooperative. This isn't a guy who's fighting them. He didn't have those things. So I would suggest to the Court that I'm not the best at explaining the cases that I could name them, but I can tell you that the implication of the cases is that giving a Miranda warning in and of itself is not conclusive. And if Mr. Lewis has attacked his statement and counsel's failure to investigate and challenge the other offense, it's not just whether or not he's innocent of the other offense, it's whether or not trial counsel could make a decision, a reasonable strategic decision, to attack that offense or not attack it. The other prong, Mr. Strickland, which is that that investigation would have revealed facts that are of sufficient exculpatory force that they would satisfy the prejudice prong, keeping in mind that we have to use the sort of deferential lens of AEDPA. Yes. So that was my question, you know, at the start is I'm not sure I understand what were the additional exculpatory facts that they failed to uncover that if they had been presented, that would make the difference. Well, there's no mention of the fact that Mr. Rogers exits that vehicle and doesn't implicate the boys. He doesn't say, Raymond Lewis just killed me. Raymond Lewis just splashed me with gasoline. What he says is he was over there, and as his mother, defendant's mother comes out. This Juanita Jackson Wall was a key witness, and she was available. She's in the pool. Her evidence, her declaration is not part of the trial court record. It was raised on the automatic appeal. So the automatic appeal does attack the trial counsel's ineffectiveness and failure to address those claims. Was it not raised for the first time before the district court? My understanding is that that claim was raised on automatic appeal and then raised again in the first habeas. That's the whole claim in a nutshell is that it's unreasonable to dismiss that sort of a claim if his allegations, if he's telling the truth or if that allegation has been taken true. Juanita Jackson was there, and she knows that what Suzy Jackson, Juanita Johnson was there, what Suzy Johnson said was not true. She said she pulls Mr. Rogers out of the back of the car and that his skin's coming off and all this other stuff. What Ms. Jackson says, Juanita Jackson says, he exits the car on his own. He exited the car on his own. There are other people that there were her other siblings. They lived across the street. She's looking out the window. The trial counsel doesn't go and talk to her or interview her. That is, undermines that conviction. If this had come in, if they had investigated and attacked it, brought in Juanita, maybe it doesn't win, but this was a case where the jury was out. The jury was, there were several jurors who were not ready. That's one of the uncertified claims is there's several jurors who weren't ready to return a death verdict, and that didn't happen until they talked about it. Do you want to reserve the rest of your time? Yes, please. Thank you. Thank you. May it please the court, Jeff Firestone, Deputy Attorney General, representing the respondent. As for counsel's penalty phase preparation, about 13 months before the penalty phase, counsel noted Lewis had been interviewed by an investigator, and the defense was assembling lists of potential witnesses for the penalty phase. One month later, nearly one year before the penalty phase, counsel stated, quote, Mr. Lewis has supplied my investigator with a voluminous list of witnesses that all need to be contacted for purposes of preparing the penalty phase as well as the fact phase of the case. As far as the voluminous list of witnesses, the California Supreme Court reasonably could have concluded counsel were tactically motivated regarding which potential witnesses were contacted, interviewed, and presented at trial. The California Supreme Court also reasonably could have presumed counsel were aware of the potential witnesses, their areas of testimony, and that certain unpresented lay witnesses seemed to have had limited contact with Lewis after his release from CYA. The duty to investigate does not necessarily require every conceivable witness be interviewed. The California Supreme Court also reasonably could have found counsel were tactically motivated in determining which witnesses to present to the jury. In regards to Claims 17 and 18, which counsel is focusing on, the declaration from Ms. Wall cannot be considered by this court pursuant to pinholster because it was not before the state court, when the state court ruled on any of Lewis' claims. I think counsel just said it was considered on direct appeal. Is that not correct? That is not correct. It was an exhibit to, I believe, a motion for an evidentiary hearing in the federal district court. So that declaration cannot be considered at all. And there was another declaration in that regard, and I believe it was a person named McMahon, and that can't be considered either. And those declarations, even though they can't be considered, they were offered for the purposes of showing one thing is that Lewis wasn't running from the scene, but he had returned to the scene, and he had talked to a deputy at the scene. So the jury already was aware of that, that he had come back to the scene. So that would just be cumulative. And he made a statement that he had returned to the scene. Counsel, can I shift your attention to the, you know, we don't often see confessions by 13-year-olds, right? And it is also, you know, you almost have to do some time travel in this case, of course, because there's a dispute about whether he asked for his mother and so forth, and no recording, which is unusual. So I'm interested in your position about the finding about the voluntariness of the confession, knowing and voluntary, and whether or not in order to answer that question, we're also going to need to answer that he had the capacity to rebut the 14-year-old presumption under California law. In other words, right, there's one finding that seems to me to maybe be baked in there, that he had the capacity to appreciate the consequences of his actions, and is that a necessary prerequisite to getting to, under the facts of this case anyway, getting to the voluntariness, knowing and voluntariness of his waiver? Sure. As far as him having the capacity to understand the Miranda waiver, Lewis— Oh, sorry, I'm not— I'm sorry. Well, it wasn't your fault. My question was probably incomprehensible. There's an issue in this case, or at least there was an issue in this case, about the rebuttable presumption under California law that an individual under the age of 14 doesn't appreciate the consequences of his conduct. So the question is whether it's a criminal act in the first place, right? And then a separate issue about knowing a voluntary waiver of Miranda. So it seems to me when we have—both those issues are present in one case here, and it seems to me it may be necessary for us to reach the first in order to reach the second. I'm not sure how somebody knowingly and voluntarily waives Miranda rights if a person doesn't appreciate the consequences of their actions in the first place. Do you think I can separate—we can separate those issues, or do we need to reach both of them? Okay. By the consequences of your actions, are you referring to the crime itself? Yes. Okay. Well, that was a decision that was left to the trier of fact, the jury. I appreciate that. So that's a determination for the jury whether or not Lewis appreciated the consequences of his actions. And so that would be entitled to deference. So just to be clear, my question is whether we need to reach both of those issues. Is one a necessary prerequisite to reaching the Miranda waiver? No. I don't think this court needs to determine whether or not he would— if he could appreciate the consequences of his actions. It does factor in as far as a knowingly and voluntarily waiver to a certain extent because arguably if one could not appreciate the consequences of their actions, they may not know that they could incriminate themselves. And so it would fall under there, I believe. My understanding—but please correct me if I'm wrong because this is a little peculiar with basically two murders. I don't want to make sure that I have this right. But my understanding is you've answered one question, which is you think that the jury made the decision and that's owed deference. My understanding is that the trial court and the jury both made that ruling, if you will, made that decision under the beyond the reasonable doubt standard. Is that right? Well, the trial—they both used the beyond the reasonable doubt standard. The trial court did use that as far as finding that his confession was knowing, intelligent, and voluntary. And that he—and the trial judge also found— Oh, I thought they used that standard also as to whether he appreciated the consequences of his actions. Do I have that wrong? What the trial judge stated— He found that Lewis made a voluntary, intelligent, and knowing waiver of his constitutional rights, that he voluntarily and intelligently and knowingly consented to talk to the officers, and that he voluntarily, knowingly, intelligently understood the significance of what he was saying at the time he made the statements. Okay, so—but I was asking a different question, but I think we get to the same place. I'm on page 25 of the Westlaw version. It's 380 of the California Supreme Court opinion. It says the jury imposed a reasonable doubt standard, right? And the trial court itself also determined it was satisfied beyond a reasonable doubt that the defendant knew the wrongfulness of his conduct. So I think that's in the decision. It just seems to me that that's a—the burden that they're applying there is higher than what is required by California law. Is that right? Well, in 1990, they were applying the beyond the reasonable doubt standard, even though it was—Proposition 8 had passed, and there was the truth in evidence provision and all that, that you have to apply the federal constitutional standard. They applied the higher standard in 1990 because that would have been the law in 1975. Thank you. Can I ask you a question to follow up on what I asked Mr. Abington? It seems like the California Supreme Court, in making its determination that Mr. Lewis's confession was under the totality of the circumstances, was voluntarily not only intelligently waived to that 1975 murder, that they considered witness testimony that Lewis received various citations and warnings from the police before 1975. But like the district court, I haven't found that Evan's supporting those various citations. So maybe you can help me, or do you know what citations and warnings the California Supreme Court was referring to? Sure. I can definitely clear that up. The California Supreme Court observed Lewis's claim that the trial court failed to consider a lack of encounters with police was undermined by subsequent witness testimony that Lewis received various citations and warnings from police before 1975. So what the California Supreme Court was saying there is that that's not an accurate claim that Lewis is making, that the trial court failed to consider that he didn't have any encounters with police because subsequent witness testimony indeed showed he did have encounters with police. What was that witness testimony? That witness testimony came from, I believe, Dr. Callahan. Dr. Callahan was a psychiatrist, and he had reviewed the reports from 1975 of Dr. Papadopoulos, a neuropsychologist, and Dr. Cronenberg, a psychologist. And he had garnered information that Lewis had prior contacts with the police for doing various things. And so the point that the California Supreme Court there was pointing out was that Lewis is claiming that the trial judge failed to consider he lacked any encounters with the police, but subsequent testimony showed he had encounters with the police. So it was more to show that Lewis's claim was not meritorious in that regard. Whether or not he had the prior encounters with the police was not before the trial court when it made its ruling on the Evidence Code Section 402 hearing. Can I ask a broader question about what lens we look at this through? As I understand it, with these summary denials in the California Supreme Court, they are supposed to take as true the well-pleaded facts of the petition. And there's a footnote in Pinholster on this point. And is that the lens through which we have to apply AEDPA, that we look at taking those as true? Was it unreasonable to say that there wasn't a prima facie case? So is that the standard? And then second, in applying it, do we look at the record as a whole in addition to those allegations? Sure. Just one moment. The state court takes those allegations, assuming they are true,  would that state a prima facie case? But then they're taken as true, and so we, in reviewing the reasonableness under AEDPA of what they did, we take them as true because we presume that they followed state law and take them as true. Is that correct? That's my understanding. I believe I have a note about that. Just one moment. I don't really have it handy. But that is my understanding, is that the state court presumes that the allegations are true, but it doesn't just automatically accept them as true. You have to look at them as far as you can't just say, okay, you made this allegation. You have to look at it in light of everything else. So if three other witnesses said differently, then you have to compare that and look at that and assess it to determine whether or not it would have merit. So you take it as true, but in the context of the record as a whole? Exactly. In regards to Claim 17, I just wanted to make sure that this Court knew that we're withdrawing our argument that a Burton objection would have been meritless, as Burton was no longer good law at the time of the Evidence Code Section 402 hearing. We had asserted that. Burton held that a request to speak to a parent was tantamount to a request for counsel, and as Detective Lean testified, that was the law at the time of his interview, so it would have controlled. Assuming that counsel should have made a Burton objection, Lewis has not established the requisite prejudice, because there is no reason to believe that the trial judge credited Lewis's statement that he had requested to speak to his mother. Thus, he has not shown a reasonable probability that a Miranda motion would have been granted on those grounds. And even if a Miranda motion had been granted on those grounds, Lewis hasn't shown a reasonable probability that would have changed the case. At the 402 hearing, Lewis testified that he asked to speak to his mother, whereas Detective Lean testified that he did not recall that happening, and if that had occurred, then questioning would have stopped. There is no indication that the trial judge found Lewis's self-serving statement that he had requested to speak to his mother was credible. Indeed, there's affirmative evidence that the trial judge would not have credited it, because if the trial judge had believed Lewis's testimony on those grounds, then the judge would have granted the motion to exclude his confession. As far as his other claims, he made claims that if the trial judge had believed his credibility, the trial judge would have granted the motion. So in addition to claiming that he requested to speak to his mother, he claimed that he did not know what the words constitutional rights meant, exercising these rights, a lawyer, and having a lawyer appointed meant. He asserted he did not know he was not required to answer the detective questions, and he also admittedly gave four different stories regarding what had happened with Rogers. So the trial judge, considering his statements, which the court had before it, rejected those because it admitted his confession, found it was admissible, and again, applying the beyond the reasonable doubt standard, found that he knowingly, intelligently, and voluntarily waived his rights and that he understood his constitutional rights. The trial judge, in stating he did not see anything in either what Lewis or Detective Lean said that Lewis's statements were not voluntarily, knowingly, and intelligently made, implicitly determined Lewis's testimony was not credible when contrasted with Detective Lean's testimony. So it is not reasonably probable the judge believed his statement that he had requested to speak to his mother. Now, on appeal, Lewis claims that, well, he didn't make his statement, his request to speak to his mother to Detective Lean's. It was made to Detective Martin. But there is no testimony whatsoever in the record that he made his request to Detective Martin, excuse me, Investigator Martin. There also is no declaration from Lewis that he made his request to Investigator Martin. So nothing in the record establishes to whom, if anyone, Lewis made his request to speak to his mother. Lewis, even if Lewis requested to speak to his mother, the California Supreme Court observed he testified inconsistently at the hearing that he both did and did not continue to talk to the detective after he requested to speak to his mother. And the trial judge, considering such inconsistent testimony at the 402 hearing, along with Lewis's numerous inconsistent statements to law enforcement during the underlying interrogation, as well as that Lewis had two prior felony convictions for robbery and receiving stolen property, would not have been unreasonable in discounting his credibility and thereupon concluding that he voluntarily continued to talk to the officers. Counsel, could I stop you there and ask a question? You just touched on it. It's at 385 on the California Supreme Court opinion. It says the defendant inconsistently testified that he both did and did not continue to talk to the detective after he requested to talk to his mother. So my understanding from the detectives is that nobody has had recollection or made note that he requested to speak to his mother, and he testified that he thinks he did. So is the statement that I just read to you from the opinion a little bit cryptic? And I'm trying to figure out if you read this to mean that if he spoke to or requested to speak to his mother that the detectives may have stopped questioning him. Well, Detective Lean said if he had requested a parent or other blood relative, we would have stopped questioning. That didn't occur. Yes, I know. But I'm asking a different question. I recognize that the officer said had that happened, we would have treated it as though he had asked to speak to a lawyer. We would have stopped questioning, right? And so I'm trying to figure out what the court is conveying here. It says further defendant inconsistently testified both that he did and did not continue to talk to the detective after he requested to talk to his mother. Yes, because that's what Lewis testified to. He said he was asked, did you continue to talk to detectives after you requested to talk to your mother? It's detective singular, and that's why it matters to me because this came up with Detective Martin. It seems to me the suggestion, and maybe you read it differently, which is all I'm really asking, is the suggestion that even if he asked Detective Martin for an opportunity to speak to his mother, then the record doesn't show that Detective Martin failed to honor that request. You could possibly read the record that way. We'd have to look at the actual transcript, which is in the record, of the question that was asked to Lewis. I don't know if it was asked in the plural or the singular as far as the officers. It is in the excerpts of record, the 402 hearing. My question just went to how you read the California Supreme Court's opinion, so I think you've answered that. Thank you. Okay. As far as even if Lewis made his request to Detective Martin, the important thing to realize is that that would have been after he had already made two inconsistent statements to Detective Lean and Christensen that would still be admissible. His first statement that he made to Detective Lean and Christensen was that he last saw Rogers smoking under the hood of his car, and he did not know about the fire until Green later told him about it. He made a similar statement to Deputy Lee at the scene. When Detective Lean then informed Lewis of an arson investigator's opinion that the fire had originated inside the car, Lewis changed his story. He then said he was siphoning gas out of the car when Green spilled or slopped gas on him. Lewis then took the gas can and threw it at Green, and the gas ended up in the car. Lewis and Green were still fooling around, and Lewis knocked a cigarette out of Green's hand. The cigarette landed in the car, which caught it on fire. So those inconsistent statements would have been admitted regardless of whether a subsequent statement to Investigator Martin was admissible. Evidence of those statements coupled with the physical evidence of the scene, as well as Lewis's flight from the scene, would have been sufficient evidence from which a reasonable trier of fact could have found, beyond a reasonable doubt, that he had committed an arson murder of Rogers. The physical evidence at the scene consisted of garden hose sections that smelled like gasoline and a can that contained a mixture of hydraulic oil and gasoline odors, showing gasoline had been siphoned as Fire Marshal Garza had opined. Splash patterns from the accelerant on the outside of the driver's door and the origin of the fire inside the car, driver's side, front, moving backwards to where Rogers was found. Lewis's flight from the scene evidenced his consciousness of guilt and his knowledge of his act's wrongfulness. Now, certainly, his second version, where he claims it was accidentally started as they were fooling around, is not as incriminating as his statement to Detective Martin that he deliberately lit Rogers on fire because Rogers slapped him and made him cry. But still, that evidence, when considered with the context of all the other aggravating evidence a reasonable jurist could find, the overall evidence still would have led to a death verdict. And that other aggravating evidence included the following. First, his brutal beating and strangling and robbery of Sims. In and of itself, the trial judge, in automatically determining whether or not it should modify the jury's death verdict, the trial judge considered that. And in denying the motion for modification, the trial judge found the facts and circumstances of the, quote, abominable murder and robbery of Sims alone provided circumstance in the aggravation that outweighed mitigation. And so that would warrant the death penalty in and of itself. But there's more. We had the residential robbery of Cardoza, felony convictions for sale of PCP, felony conviction for receiving stolen property, attempts to stab a correctional officer with a shank while he was incarcerated, and the arson in the jail. So collectively, when all of that evidence is considered together, certainly with Sims' murder, that that would be enough evidence from which a reasonable trier of fact could find that the death penalty was warranted. Can I go back to one question? I hate to go back to it about the request for the mother. I had one question about another line in the California Supreme Court's opinion because you said that you made the point that Lewis didn't submit a declaration saying that he made the request to Martin. But the California Supreme Court says defendant maintains, this is on the direct appeal, defendant maintains he made his request to investigate a Martin who performed a portion of the interview. What was that assertion based on? There must have been something in the record of the direct appeal for them to say that. The appellate pleading itself. That was just an assertion in the brief not backed up by... That's my understanding, yes. And if you read beyond that, if you read the next sentence, if you have that, I believe the court says that there was no evidence to that effect. Well, it just says, indeed, apart from defendant's self-serving testimony at trial, there was no evidence that defendant in fact requested to talk to his mother during the interview. That suggests that this was covered factually at the trial? It was covered factually as far as a request. He said he made the request to talk to his mother. He didn't specify who he requested to. And that's in the excerpt of the record as well as the 402 hearing. The court can read it right there that he never mentioned that it was to Detective Martin. And so that came from an appellate pleading. I wanted to, just on one matter, dealing with Claims 2 and 10. It looks like you argue that Lewis's Claims 2 and 10 are procedurally barred because they overlap with Claim 1, which the state court found to be procedurally barred, but the California Supreme Court reviewed Lewis's claim that substantial evidence did not support the robbery special circumstance. So I guess I just wanted to see if you can explain why this claim is barred if the California Supreme Court ruled on it on the merits. I believe the bar referred to certain aspects of it as far as, I don't know if it was Fifth Amendment grounds or other constitutional amendment grounds. Those weren't raised, if my recollection is correct, but other grounds were. So for purposes of certain constitutional amendments, it was procedurally barred. For other constitutional amendments, he had raised the claim. And to just follow up on Chief Judge McGeeh's question, to the extent it was ruled on by the court, the state court, you can think it's not barred, that we can breach it? Correct. Correct. As far as going back to Lewis's confession, assuming that the counsel were deficient for failing to challenge the admissibility of Lewis's subsequent confession to Investigator Martin, there was no prejudice because a fair-minded jurist could find it not reasonably probable that the verdict would have been different. But at any rate, analysis is doubly deferential. And here Lewis has not established that a reasonable federal judge could not have determined that a reasonable state judge would have not found it was not reasonably probable the verdict would have been different. Can I ask you, before you conclude, on the jury misconduct claim, if we reached that claim, I'm just curious, to what extent, if any, would we apply the Maddox-Rahmer framework, or should we just decide that the juror Paul's statement is barred by California's evidence code section, I think it's 1150A? Correct. It is barred by 1150A of the evidence code. That's how this court should... So we wouldn't reach the Maddox-Rahmer framework if we were to reach this claim. Correct, because the juror's statement during deliberation itself was not misconduct. Instead, it was merely a verbal reflection of his mental processes. It wasn't a referral to an extraneous source or code that mandated a particular course of conduct. As far as counsel's investigation of the A.Z. Rogers murder, what counsel had is Lewis confessed to committing the murder, so counsel knew that. To Dr. Adams, Lewis admitted that he had killed Rogers and that Rogers deserved it, so counsel certainly would have had that information at some point. Counsel also had the physical evidence, again, which showed it was a deliberate arson murder. It was consistent with the arson investigator's findings. There were splash patterns on the outside of the vehicle door from an accelerant, and then an accelerant was used inside for the fire, so that would be all indications that it was deliberately set as opposed to an accidental origin. Also, counsel had information on Lewis's background that showed that he was violent. Excuse me just a moment. Well, there was a proffer that Lewis had made, so it's in the record that his behavior at CYA, that he had an explosive temper and that when he started crying, he would tend to lose control, and then he had to be subdued, and Lewis's confession is consistent with that, that when Rogers had slapped him and made him cry, that's why he had done what he did, so at least that was consistent with a proffer that was made about what a CYA counselor would have testified to have called. Counsel did look into Lewis's CYA background, so presumably counsel would have been aware of such information, and that's an important thing to point out is that there are no declarations from counsel as to counsel's penalty phase strategy or preparation of what they did. There's no records that are reasonably available as far as billing records, communication with investigators. None of that was provided as exhibits in any of the state pleadings. There was a declaration, interestingly, from counsel Catherine Hart on a different issue, but nothing about the penalty phase preparation or what they did, and it's appellant's burden. Appellant has the burden to show ineffective assistance to counsel, and what appellant has shown is that the state court, well, appellant hasn't shown that the state court unreasonably and contrarily applied Supreme Court precedent, and the state's decision is entitled to deference. Unless this court has any other questions, I'd submit the matter. Thank you. Thank you. Thank you, Your Honor. Please, the Court. I don't want to let trial counsel off the hook on claims 14, 15, and 16. Respondent talks about the fact that testimony came in from Drs. Callahan and Adams, that the idea was that they had limited contact with the witness, that in 1975, officers, the doctors, Cronenberg and Papadopoulos, said that they didn't, he said that he could get, their argument is they could get this information from them. The problem with that is they haven't talked to the mom. If you make a decision, we want to go with Adams and Callahan, that's fine, but you can't do that unless you've actually talked to the defendant's mother. If they had talked to the defendant's mother, what would they have found? They would have found that she had had a horrible life and that she was poor. She dropped out of school at 16. What did the jury not know? The jury didn't know that Raymond had grown up out there in Lunar. He was the poorest family. Those kids wore the same clothes every day. They wore the same shoes. They didn't have running water in their house. They would go and get jugs of water and bring it back to the house. They would get it out of ditches and other things. Her father grew up in rural Texas. She'd only met her father. Whose father? Minnie Lewis's father. She'd only met him twice. This whole idea of you're comparing when you say, like, what's your life like? Why are you like this? I'm like this because my mom's life was bad, and my mom passed this on to me. His mom dropped out of high school. She had her first kid at 16. They were living in a place that cost $149 a month. They didn't have anything. They were sleeping on mattresses. But wasn't there testimony from some of the family? No, what they relied on was they relied on testimony from doctors. Callahan says, Minnie had a problem with drinking. Yes, they grew up poor. Those are just blank statements from a doctor. It kind of seems like a strategic judgment. I mean, he could have put on a defense of, here's what made me what I am. And instead, the defense of the penalty phase was, here's what I can be. I am fixable. If I get structure, I won't do this again, and I'll be able to help and be a counselor. Why isn't that just a strategic judgment under the doubly deferential standard of Edmund Strickland that we can't do anything? All the court's cases, the Supreme Court's cases, Ron Pilla, all these cases are all based on the idea that you can't make those decisions until you've made an investigation. That without talking, the first step in representing a person, you represent a dog. Who's the owner? You represent a kid. Who's your mom? The idea that they represented this guy for two and a half years and never got around to talk to his mom, his dad, his sister, or anybody. They had one cousin who, because she grew up with her grandmother, she knew enough to contact the lawyer, and she made an appointment. I guess what I wanted to refer to is was there any declaration by any of his siblings or family members that he suffered physical abuse? Yes. We have declarations with his sister Diane. His mom was a complete alcoholic. She had these horrible, horrible— I know she was an alcoholic. They would go and get her. They would fight their mom. The question was is there evidence in the record that she physically abused him? Yes. Where is that? Because there were family declarations describing Lewis as the most spoiled sibling because he was not disciplined like the other children. So I'm curious if you could point to in the record where that is. Diane, his sister, his brother, his oldest brother, he was the oldest of her children, talked about how she had this terrible drinking problem. I understand that, that the mom did. The mom did, and they would have to go—she would fight them. They would have to go and get the mom, and she would fight them because she didn't want to leave the bar where she was. Fight her? Was there any— That's Diane. That's Ernest. I know, but did they specifically include Lewis? They specifically included Lewis. They specifically said Raymond—Diane talked about it, and she said she'd get into it with the boys. Can you tell me? Do you have the site there? I have the thing that I know in my mind. She called him a motherfucker, and she fought them about the bar. That's Diane saying that. That's his stepdad, Ernest McCuller, said that. McCuller Jr. said that. That's the reason he divorced her because she was drinking, and she was fighting. She fought him. The idea of this idea that counsel could go through this whole case and represent Raymond and not know any of the idea that in 1975 some doctor said, oh, you know, she's not really reliable. If you can't make the decision about she's reliable until you talk to her, you have to do the first step in anything, and that's going out and talking to this guy's mom. Everybody else goes from there. There's not a—this is not a laydown murder case. There's one witness, Willis Randolph. These other people are the offense that he's on ground for. The state says this is a terrible, terrible crime. These are three people who've been smoking crack all night long. They're in the middle of the night, and they want more crack. They're looking around for money. That's not the worst of the worst. That's not what Roper talks about, the worst of the worst. What makes this the worst of the worst is that he's got a prior murder, and if you know it's a prior murder and you know your client's a drug addict, then you've got to find out, why is he a drug addict? What is his life like? Would you like to make your concluding statement? I would ask this Court that if, in the alternative, they could send this case back for an evidentiary hearing where all of these other things could be vetted out, but the idea that Raymond would be on death row for a case where his lawyer doesn't do, like, the most basic things to help him out is just wrong, and that's unreasonable. Can I ask just one further question? Yes. What's your response to the same question I asked your opposing counsel? What's the basis of this assertion in the California Supreme Court opinion that Lewis maintained that he had made the request for his mother to investigate a Martin? Do you know what that was based on, what in the record? Did he testify to that at the trial? I believe that he testified that he asked for his mother, and then that Officer Lean came in and explained to him that he was the one who was making dinner provisions, and that was about 5 p.m. on the day he was brought in. All right. Thank you. Thank you very much. I'm sorry for you. Mr. Abbington, thank you, Mr. Firestone, for your oral argument presentations. Today the case of Raymond Lewis v. Ronald Davis is now submitted, and we are adjourned. Thank you. Thank you very much.
judges: MURGUIA, CHRISTEN, COLLINS